UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

Xiang Ren,

                Plaintiff           09-CV-1186

  -against-                            MEMORANDUM
                                                    OPINION
Daniel C. Kuo, M.D.                        AND ORDER

                Defendant.
--------------------------------------X

SIFTON, Senior Judge.

    Plaintiff Xiang Ren commenced this action against defendant Dr. Daniel C. Kuo, M.D. on December 23, 2008,[1] alleging that defendant was negligent in his medical treatment of plaintiff and that defendant had failed to acquire informed consent from her, in violation of Public Health Law § 2805-d.[2] Now before the court is a motion for partial summary judgment by plaintiff, seeking to dismiss defendant's statute of limitations defense, and defendant's cross motion for partial summary judgment, seeking dismissal of the complaint on the ground that the action was filed outside of New York State's 2.5 year statute of limitations

---

[1]The action was first filed in the Southern District of New York, and was transferred to the Eastern District of New York on March 23, 2009.

[2]"Lack of informed consent means the failure of the person providing the professional treatment or diagnosis to disclose to the patient such alternatives thereto and the reasonably foreseeable risks and benefits involved as a reasonable medical, dental or pediatric practitioner under similar circumstances would have disclosed, in a manner permitting the patient to make a knowledgeable evaluation." N.Y. C.L.S. Pub. Health § 2805-d(1).

for medical malpractice suits. For the reasons stated below, both summary judgment motions are denied.

**BACKGROUND**

The following facts are taken from plaintiff's complaint and the parties' submissions in connection with this motion. Disputes are noted.

At all times material to the complaint, plaintiff was a resident of Broward County, Florida, and a citizen of the State of Florida, and defendant was a resident of New York State with his principal place of business in New York. Complaint at ¶¶ 2, 4 ("Compl.").

Plaintiff was born in Shanghai, China, and resided in China until 2002. Compl. at ¶ 7. Plaintiff was married in China in 1992 and had a healthy male child in 1993. *Id.* Pursuant to Chinese law, plaintiff was prohibited from having additional children. *Id.* at ¶ 8. When plaintiff became pregnant in China with her second child in 1994, the government of China forced her to have an abortion. *Id.* For this and other reasons, plaintiff immigrated to the United States in 2002. *Id.*

Plaintiff first met with defendant on January 9, 2004, for a gynecological check up. Deposition of Daniel Kuo, Dated October

14, 2008, at 6 ("Kuo Dep."). Defendant performed a Pap smear,[3] among other tests, and recommended that plaintiff return in 6 months. *Id*. at 8. The analysis of the Pap smear showed a low grade squamous intraepithelial lesion, which signifies atypical cells that may become cancerous (which Dr. Kuo referred to as "two steps" before cancer). *Id*. at 8. Plaintiff returned on May 5, 2004, and another Pap smear was taken; the results again showed the atypical cells. *Id*. at 11, Erichsen Aff. Ex. D. Plaintiff's next visit was on May 21, 2004, at which time a cervical biopsy was performed. *Id*. at 12. The results of the biopsy showed moderate to severe squamous epithelial dysplasia of the cervix, which indicated that plaintiff had a precancerous lesion, and the presence of the Human Papaloma Virus (HPV), which is associated with cancer. *Id*. at 13. A November 17, 2004 Pap smear showed atypical cells. Erichsen Aff. Ex. D. Plaintiff returned to defendant's office on January 10, 2005, at which time an examination was performed and plaintiff was instructed to return in three months. Kuo Dep. at 14-15.

In 2005, plaintiff moved to Florida, where she saw obstetrician Dr. Yat Min Chen seven times that year. Compl. at ¶ 10, Erichsen Aff. Ex. E. Dr. Chen's examinations found that plaintiff had HPV and a pre-cancerous lesion, leading him to

---

[3]A Pap smear is an examination under the microscope of cells scraped from the cervix. The test can detect cancerous or precancerous conditions of the cervix. *See* http://www.nlm.nih.gov/MEDLINEPLUS/ency/article/003911.htm.

recommend a LEEP cone biopsy,[4] which was performed on September 12, 2005. Erichsen Aff. Ex. E. Dr. Charles Markham, a lab analyst, interpreted the results as showing that plaintiff had a micro-invasive carcinoma, which is a form of cancer. *Id*. Plaintiff returned to New York and presented Dr. Markham's report to defendant on January 4, 2006. Compl. ¶ 13. At that time, plaintiff advised defendant that she wished to have more children. *Id.* at ¶ 14. Defendant conducted various tests, including a Pap smear, and advised plaintiff to undergo a hysterectomy. Compl. ¶ 15. Defendant did not communicate with the pathologist who reported the carcinoma, nor did he recommend that plaintiff seek a second opinion before having a hysterectomy. *Id.* at ¶¶ 23, 24. Defendant is a gynecologist, and is not trained in oncology. Kuo Dep. 32-33. Defendant performed the procedure on February 9, 2006. *Id.* at ¶ 18. As a result of the procedure, plaintiff is no longer able to bear children. Ren. Aff. ¶ 7.

On February 17, 2006, plaintiff returned to defendant for her first post-operative visit to check the wound. Kuo Dep. at 25-26. On June 14, 2006, plaintiff returned to defendant for a second visit, complaining of dizziness and a swollen breast. *See*

---

[4]A cone biopsy is a surgical procedure in which a cone-shaped tissue sample from high in the cervical canal is removed for examination. The procedure is performed after a Pap test shows moderate to severe cell changes. Loop electrosurgical excision procedure (LEEP) is one method of removing the sample. *See* http://www.webmd.com/cancer/cervical-cancer/cone-biopsy-conization-for-abnormal-cervical-cell-changes.

Erichsen Aff. Ex. D. Defendant performed a physical examination, took a Pap smear, prescribed a vaginal cream, and told plaintiff to return in six months. *Id*. On June 24, 2006, the results from the Pap smear returned, showing atypical cells and the presence of HPV. *Id*. After receiving these results, defendant called plaintiff in Florida and urged her to return to New York for consultation. Deposition of Xiang Ren, taken June 23, 2009, at 167, 171-172 ("Ren Dep.").[5] Plaintiff made an appointment and returned to defendant's office on August 7, 2006, at which time defendant noted the results of the June 14 Pap smear and advised plaintiff to return in six months for another Pap smear. Erichsen Aff. Ex. D. Plaintiff testified that defendant seemed concerned and that he wanted to follow up with her; she had the impression that the surgery "might not [have been] thorough." Ren Dep. at 172. When asked whether she voiced these concerns with defendant, plaintiff stated that she was afraid to do so, because "later it wouldn't be good for me to seek medical attention from him because he was the person who performed the procedure." *Id*. at 173.

The parties contest the nature of the examinations that were performed on the August 7 visit. Defendant argues that no exam was performed, based on the lack of treatment notes. Erichsen

---

[5] Defendant states in his papers that plaintiff initiated the visit, implying that he did not ask her to return. However, defendant does not provide a sworn statement to this effect.

Aff. ¶ 25. Plaintiff contends that the visit was a follow up visit to monitor plaintiff's abnormal cells and risk for cancer, and that an extensive exam was performed. Plaintiff provides a billing statement from defendant's office, which states that plaintiff was billed under billing code 99215 and that she had an abnormal Pap smear and a "high complex" condition. P. Opp. Ex. A.[6] Plaintiff submits the standard code booklet maintained by the American Medical Association for billing, which states that a physician charging code 99215 must perform two of the three following actions: (1) take a comprehensive history; (2) take a comprehensive examination; (3) make medical decisions of high complexity. P. Opp. Ex. B.[7] Furthermore, in order for a doctor to bill under this code, the problem should be of moderate or high severity, and the visit should last approximately 40 minutes. *Id*. Plaintiff maintains that, based on this evidence, it can be determined that the visit was a substantial one that constituted continuing treatment.

In 2007, plaintiff began treatment with the First Family HealthCare Clinic in North Carolina. Erichsen Aff. Ex. G. The results of a July 2, 2007 Pap smear showed that plaintiff

---

[6]Plaintiff submits this exhibit in conjunction with her opposition to defendant's motion for summary judgment and in reply to defendant's opposition to her motion for summary judgment.

[7]*See also* https://catalog.ama-assn.org/Catalog/cpt/cpt_search_result.jsp?_requestid=39743 (results of code search for 99215 in Queens, New York).

continued to have atypical cells. *Id*. A February 19, 2008 Pap smear showed that plaintiff had more serious cell abnormalities. *Id*. A subsequent test was negative for cancer. *Id*.

Plaintiff filed her complaint on December 23, 2008, 2 years and 4 months after her last visit with defendant on August 7, 2006. Additionally, plaintiff has filed a related action entitled *Xiang Ren v. Charles Markham, M.D., Laboratory Corporation of America and Laboratory Corporation of America Holdings*, Case No. 07-29705, which is currently pending in Florida State Court, alleging that Dr. Markham, the pathologist who read plaintiff's LEEP biopsy, misread the biopsy in a manner that resulted in plaintiff having an unnecessary hysterectomy.

**DISCUSSION**

**I. Jurisdiction**

Plaintiff's complaint asserts that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, which provides that "district courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between... citizens of different states." 28 U.S.C. § 1332(a). Plaintiff is a citizen of Florida, and defendant is a citizen of New York. The diversity requirement is met with regard to citizenship. With regard to the statutory minimum, plaintiff asserts that the

"amount on controversy without interest or costs exceeds the sum or value specified by 28 U.S.C. § 1332." Compl. ¶ 5.

"In a diversity case, the party invoking the jurisdiction of the federal court bears the burden of establishing a reasonable probability that the amount in controversy requirement of 28 U.S.C. § 1332(a) is met." *Burns v. King*, 160 Fed. Appx. 108, 111 (2d Cir. 2005). "This burden is hardly onerous, however, for we recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assur. Soc'y of the United States*, 347 F.3d 394, 397 (2d Cir. 2003). "Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings." *Tongkook Am. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994).

In this case, plaintiff has not specified an amount in controversy, but instead has referred to the statutory minimum as stated in § 1332. Plaintiff alleges in her complaint that defendant mistakenly removed her uterus, resulting in her inability to have children. Although plaintiff has failed to state a numerical amount in controversy, I am persuaded that plaintiff has established a reasonable probability that the amount in controversy exceeds $75,000, thus satisfying the requirements for jurisdiction.

**II. Statute of Limitations**

Under New York law,

> An action for medical... malpractice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure.... For the purpose of this section the term "continuous treatment" shall not include examinations undertaken at the request of the patient for the sole purpose of ascertaining the state of the patient's condition.

N.Y. C.P.L.R. § 214-a.

In order to satisfy the statute of limitations, plaintiff must show that her action accrued after June 23, 2006, two years and six months before she filed her complaint. The only contact between plaintiff and defendant that falls within this time is the August 7, 2006 visit. Plaintiff contends that she was under continuous treatment from defendant that included the time spanning the hysterectomy to the August 7 visit, and therefore the statute of limitations should be tolled to include the August 7 visit and the hysterectomy. Defendant maintains that the August 7, 2006 visit does not constitute continuous treatment relating to the hysterectomy, and therefore plaintiff's claim is time barred.

"The continuous treatment doctrine acts to toll the statute when 'there has been a course of treatment established with respect to the condition that gives rise to the lawsuit.'" *Marks v. Model*, 2008 NY Slip Op 6195, *2, 53 A.D.3d 533, 862 N.Y.S.2d

533 (2d Cir. 2008) (quoting *Nykorchuck v. Henriques*, 78 N.Y.2d 255, 259, 577 N.E.2d 1026, 573 N.Y.S.2d 434 (1991)). The purpose of the doctrine is to "maintain the physician-patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on a case from onset to cure." *Nykorchuk*, 78 N.Y.2d at 258 (quoting *McDermott v. Torre*, 56 N.Y.2d 399, 408, 437 N.E.2d 1108, 452 N.Y.S.2d 351 (1986)); *see also Gomez v. Katz*, 2009 NY Slip Op 1082, *3, 61 A.D.3d 108, 111, 874 N.Y.S.2d 161 (2d Dept. 2009) ("The underlying premise of the continuous treatment doctrine is that the doctor-patient relationship is marked by continuing trust and confidence and that the patient should not be put to the disadvantage of questioning the doctor's skill in the midst of treatment, since the commencement of litigation during ongoing treatment necessarily interrupts the course of treatment itself."). "[N]either the mere 'continuing relation between physician and patient' nor 'the continuing nature of a diagnosis' is sufficient to satisfy the requirements of the doctrine. In the absence of continuing efforts by a doctor to treat a particular condition, none of the policy reasons underlying the continuous treatment doctrine justify the patient's delay in bringing suit." *Id*. at 259 (quoting *McDermott*, 56 N.Y.2d at 405, 406). Plaintiff has the burden of establishing that the statute of limitations should be tolled. *Werner v. Kwee*, 148 A.D.2d 701, 702, 539

N.Y.S.2d 449 (2d Dept. 1989).

The continuous treatment doctrine contains three elements: (1) "the plaintiff continued to seek, and in fact obtained, an actual course of treatment from the defendant physician during the relevant period";[8] (2) "the course of treatment provided by the physician [was] for the same conditions or complaints underlying the plaintiff's medical malpractice claim"; (3) the physician's treatment was continuous, which is established when "further treatment is explicitly anticipated by both physician and patient." *Gomez*, 61 A.D.3d at 111-113. The last element is satisfied when "periodic diagnostic examinations are prescribed as part of ongoing care for a plaintiff's existing condition." *Elkin v. Goodman*, 285 A.D.2d 484, 486, 727 N.Y.S.2d 158 (2d Dept. 2001).[9]

The record indicates that plaintiff sought and received treatment from defendant over the course of two years for abnormal cell growth that was the precursor for cancer. Starting

---

[8] "The term 'course of treatment' speaks to affirmative and ongoing conduct by the physician such as surgery, therapy, or the prescription of medications. A mere continuation of a general doctor-patient relationship does not qualify as a course of treatment for purposes of the statutory toll." *Gomez*, 61 A.D.3d at 112.

[9] The Court of Appeals has held that the applicable date for continuous treatment tolling is the next scheduled visit relating to the condition at issue, even if the plaintiff does not attend the visit. *See Richardson v. Orentreich*, 64 N.Y.2d 896, 477 N.E.2d 210, 487 N.Y.S.2d 731 (1985). "Thus, a patient remains under the 'continuous treatment or care' of a physician between the time of the last visit and the next scheduled one where the latter's purpose is to administer ongoing corrective efforts for a same or a related condition." *Id*. at 899.

in 2004, defendant performed regular Pap smears and other tests to monitor the atypical cells. When the cell development reached a point that raised significant concern that plaintiff would develop cancer, defendant performed a hysterectomy. Following the surgery, defendant instructed plaintiff to return regularly. On June 14, 2006, defendant took a Pap smear, which showed atypical cells that could be the precursors of cancer, the same condition that defendant had attempted to address by performing the hysterectomy. This was plaintiff's first Pap smear since defendant had performed the surgery. According to plaintiff's testimony, after defendant received the results, he called plaintiff and urged her to return to New York for an examination. Plaintiff has submitted evidence that could lead a reasonable jury to believe that, on August 7, 2006, defendant performed a 40-minute exam and provided treatment for her condition. Plaintiff testified that defendant stated he wished to follow up with her in connection with her test results, and told her to continue having Pap smears performed on a regular basis. Plaintiff further testified that she refrained from mentioning her concern that the surgery had not been "thorough" because she expected him to continue providing care for her condition. A reasonable fact finder could find that plaintiff received continuous treatment from defendant and that the August 7, 2006 visit was part of that treatment.

Defendant makes three arguments in opposition: (1) plaintiff initiated the August 7 visit with defendant, which renders the visit not a part of continuing treatment pursuant to § 214-a; (2) no treatment was rendered to plaintiff on August 7, and accordingly the visit could not be part of continuous treatment; (3) any examination that could have occurred on the August 7 visit is not related to the hysterectomy or cervical cancer that gave rise to this lawsuit, because those conditions were cured or required no further treatment. Defendant's first and second arguments are without merit. Plaintiff testified that defendant called her in June 2006, expressed concern about her test results, and asked her to return to New York for an examination.[10] Additionally, plaintiff has submitted evidence that defendant did provide treatment on August 7, based on his billing practices.[11]

Defendant argues that regular Pap smears cannot constitute a continued course of treatment, citing cases holding that routine examinations of patients who appear to be in good health do not constitute a continued course of treatment. However, plaintiff's

---

[10]The initiation of the treatment visit by defendant distinguishes this case from *Massie v. Crawford*, 78 N.Y.2d 516, 519, 583 N.E.2d 935 (1991), in which return visits initiated by a patient to have her condition checked did not constitute continuous treatment.

[11]Defendant submits affidavits from two experts who, after reviewing plaintiff's medical records, defendant's office records, and deposition testimony, opine that plaintiff's June 14, 2006 and August 7, 2006 visits to defendant do not fall within the category of continuous treatment. These affidavits base their opinions on the lack of treatment notes by defendant, and do not take account of the billing evidence presented by plaintiff.

circumstances are distinguishable. On her first visit to defendant, abnormal pre-cancerous cells were discovered, requiring regular Pap smears to monitor developments. Over the ensuing two years, several additional tests revealed atypical cells, both before and after plaintiff's surgery. Accordingly, the cases cited by defendant are inapposite.[12]

Defendant argues that a hysterectomy is a discreet treatment that does not require follow up. However, it is undisputed that the hysterectomy was performed in order to treat early-stage cancer. Plaintiff presents evidence that subsequent examinations were performed by defendant in order to ascertain whether plaintiff was still at risk for cancer. The relevant condition

---

[12]*See Charalambakis v. City of New York*, 46 N.Y.2d 785, 386 N.E.2d 823, 413 N.Y.S.2d 912 (1978) (where a premature baby was given excessive oxygen that made her blind, but the injury was not discovered until several months later, routine pediatric examinations following the birth and leading up to discovery of the injury were not continuous treatment), *Robertson v. Bozza and Karafoil*, 662 N.Y.S.2d 324, 242, A.D.2d 613 (2d Dept. 1997) (where plaintiff had a mammogram and was diagnosed with benign cysts, after which no treatment was rendered or contemplated, and more than a year later returned to defendant physician's office and was diagnosed with breast cancer, there was no continuous treatment), *Davis v. City of New York*, 38 N.Y.2d 257, 342 n.E.2d 516 (1975) (where patient sought examination of a lump in her breast and was told there was no cancer, returned a year later for a second examination that did not diagnose cancer, made an appointment 10 months later for an examination, and prior to the examination was admitted to the hospital with breast cancer, the diagnostic examinations were not continuous treatment); *Massie v. Crawford*, 78 N.Y.2d 516, 583 N.E.2d 935, 577 N.Y.S.2d 223 (1991) (where plaintiff had an IUD inserted by defendant gynecologist, and had periodic examinations to check on the status of the IUD, and fifteen years later plaintiff suffered from inflammation requiring a hysterectomy, which she claimed was caused by improper insertion of the IUD, the court ruled that the periodic examinations were not continuous treatment)*, Nykorchuck v. Henriques*, 78 N.Y.2d 255, 577 N.E.2d 1026, 573 N.Y.S.2d 434 (1991) (where plaintiff showed her doctor a lump in her breast, but he took no treatment action, and three years later two lumps were noted in plaintiff's breasts, but no action was taken, and four years later plaintiff was diagnosed with breast cancer, there was no continuous treatment).

for the consideration of whether the August 7, 2006 visit was a follow up visit is not the hysterectomy, but rather the cancer.

With regard to the cancer, defendant asserts that the hysterectomy successfully treated it, and therefore the August 7 visit could not have provided continuing treatment for that cancer. However, whether the hysterectomy was successful in removing all cancer in the cervical area is a question of fact that cannot be determined from the papers. Defendant submits affidavits from two physicians who state that the hysterectomy treated the cervical cancer, based on the fact that the pathology report following the surgery came back negative. *See* Affidavits of John Lovecchio, M.D. and Henry Prince, M.D. However, the pathology report to which the physicians appear to refer, dated February 9, 2006, simply states that there is no carcinoma identified in the uterus that was removed. *See* Ex. D. Plaintiff has submitted affidavits from two gynecologists and an oncologist from the state of Florida, each stating that a patient who has undergone a hysterectomy is at high risk for recurrence in the cervical canal or vaginal cuff and therefore subsequent Pap smears must be diligently followed in order to ensure that no cancer has developed. *See* Affidavits of Andrew Schneider, M.D., Tara Solomon, M.D., and Berto Lopez, M.D. The numerous Pap smears showing abnormal results show that plaintiff suffered ongoing irregular cell growth that could develop into cancer, both before

and after the surgery. Whether the abnormal cells detected after the surgery should be considered part of the same condition that prompted the surgery is a factual dispute that cannot be resolved in this motion for summary judgment.

Because there are material issues of fact as to who initiated the August 7, 2006 visit, the purpose for the visit, and the nature of the examination performed during the visit, all of which pertain to whether the visit was part of a course of treatment to monitor plaintiff's cancer risk, in response to which the hysterectomy was performed, the question of whether the statute of limitations should be tolled cannot be resolved on summary judgment.

**CONCLUSION**

For the reasons stated herein, the cross motions for summary judgment by plaintiff and defendant are denied. The Clerk is directed to transmit a copy of the within to all parties and the assigned Magistrate Judge.

SO ORDERED.

Dated :   Brooklyn, New York
          September 24, 2009


By: /s/ Charles P. Sifton (electronically signed
           United States District Judge